**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0908-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EUGENE CADY,

    Defendant-Appellant.

_____

> Argued January 21, 2026 – Decided February 9, 2026
>
> Before Judges Gilson and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 13-06-0597.
>
> Anthony J. Iacullo argued the cause for appellant (Mandelbaum Barrett PC, attorneys; Andrew Gimigliano and Austin W.B. Hilton, on the briefs).
>
> Michele C. Buckley, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, of counsel and on the brief).

PER CURIAM

Defendant Eugene Cady appeals from an October 16, 2024 order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm substantially for the reasons set forth in Judge Candido Rodriguez's thorough written opinion.

A jury convicted defendant of first-degree murder of Kason Wilson, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). He was sentenced to forty-two years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, for murder, and concurrent terms of seven years with forty-two-month periods of parole ineligibility for the weapons offenses.

We affirmed his convictions and sentence on direct appeal. State v. Cady, No. A-0358-17 (App. Div. Feb. 12, 2020). Our Supreme Court denied defendant's petition for certification. State v. Cady, 246 N.J. 436 (2021).

The facts and evidence giving rise to defendant's convictions were detailed in our opinion on his direct appeal, which we need not repeat in detail. We summarize the facts relevant to the issues raised in this appeal.

On August 21, 2011, Wilson was shot to death on Union Street in Linden. The State alleged Wilson's murder was related to a string of retaliatory shootings

A-0908-24

between Bloods and Crips gang members. Defendant was a member of the Rollin 30's Crips and Wilson was believed to be the highest-ranking G-Shine Blood in Linden.

The State called several witnesses who implicated defendant in Wilson's murder. Anthony Pearson testified he was a member of the Rollin 30's Crips. On the night Wilson was killed, Pearson, defendant, Lorenzo Johnson, Dyanne Simons, an individual identified as "Loco," and others were at Tynetta Howard's residence in Linden celebrating Johnson's birthday. During the party, defendant learned Wilson was nearby on Union Street. Defendant left the party with a handgun he retrieved from a closet. Loco left "probably a minute or two later." Pearson heard "two gun shots." Shortly after he heard the gun shots, defendant and Loco walked back into the residence. Defendant told Pearson, Howard, Loco, and an individual named "Chelsea" that he shot Wilson.

Dyanne Simons testified that she spoke with defendant in Howard's residence following the shooting. She told defendant Wilson was killed, and defendant answered, "[y]eah, I know. I did that." Milad Shenouda, a member of the Rollin 60's Crips, testified that defendant confessed to Wilson's murder in August 2012 when he and defendant shared a cell in the Union County Jail.

A-0908-24

At trial, Johnson recanted his prior recorded statement to law enforcement implicating defendant. Portions of his statement were read to the jury. In 2012, Johnson, a member of the Rollin 30's Crips, was incarcerated in the Union County Jail with defendant. Defendant told Johnson he saw Wilson walking and "pulled out a gun and shot him once in the chest. As he was falling on the ground, he shot him twice and then he ran off back to [Howard's]" residence.

The State also called Tyasiah Cook, the mother of defendant's children, as a witness. On September 17, 2012, Cook gave a two-hour recorded statement to law enforcement in which she implicated defendant in Wilson's murder. At trial, Cook denied any memory of the substance of her statement, or anything related to the shooting. Portions of Cook's recorded statement were played for the jury. She stated that on the night of Wilson's death, defendant was at Howard's residence with other individuals. The next day, defendant called her asking for money so he could go to Indiana. When she asked why, defendant said "he was involved" in the shooting the night before.

On June 29, 2022, defendant filed a petition for PCR contending his trial counsel was ineffective for refusing his request to call Chelsea Jacobs as a witness at trial. Defendant contends he told trial counsel Jacobs would have testified there was no party at Howard's residence the night of Wilson's murder

4

and the only people at Howard's residence that night were Jacobs, Howard, and Howard's children. Jacobs signed a certification in support of the petition for PCR. Defendant also argues the trial court engaged in improper ex parte communications with the State regarding a potential issue with one of the jurors.

Judge Rodriguez conducted an evidentiary hearing at which defendant and his trial counsel testified. Trial counsel was not able to locate his file or notes and did not recall if defendant asked him to call Jacobs as a witness. Defendant testified he told defense counsel Jacobs would testify that there was no party at Howard's residence the night of the shooting, but he refused to call Jacobs because he was not certain what she would say.

On October 16, 2024, the judge entered an order denying defendant's petition supported by a written opinion. The judge determined "it [was] extremely unlikely that . . . Jacobs'[s] testimony would have altered the jury verdict." "The primary function of [her] testimony, if believed, would be to impeach the credibility of several of the State's key witnesses," but "would not affect the testimonies of . . . Shenouda (to whom [defendant] . . . allegedly confessed)" and others.

The judge also found it was "highly unlikely that . . . Jacobs'[s] testimony would be believed over the four fact witnesses placing [defendant] at . . .

A-0908-24

Howard's" residence "due to large issues with . . . Jacobs'[s] credibility." These issues included "several divergent accounts [she had given to law enforcement] of what transpired on the night of . . . Wilson's death," her admissions to law enforcement that she lied several times during her recorded statement, and that she "appears to have been (and perhaps still is) romantically involved with" defendant.

The judge rejected defendant's argument that the trial court's ex parte conversation with the State violated his right to be present at trial. He found "upon receiving the communication about potential witness tampering from the State, the court described the communication on the record at the next opportunity." Defendant "failed to show how this ex parte communication rendered [his] counsel deficient or prejudiced [his] case at trial."

On appeal, defendant raises the following points for our consideration.

> POINT I
>
> THE PCR COURT SHOULD HAVE GRANTED [DEFENDANT]'S PCR PETITION DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> POINT II
>
> THE PCR COURT SHOULD HAVE GRANTED [DEFENDANT]'S PCR PETITION DUE TO THE TRIAL COURT'S IMPROPER EX PARTE

6

COMMUNICATION WITH THE STATE REGARDING JUROR [SEVEN].

"Our review of a PCR [judge]'s factual findings" after it conducts an evidentiary hearing "is 'necessarily deferential.'" State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). "An appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he has observed firsthand." State v. Gideon, 244 N.J. 538, 562 (2021) (quoting Nash, 212 N.J. at 540). Therefore, when a PCR judge holds an evidentiary hearing, we should "uphold the PCR [judge]'s findings that are supported by sufficient credible evidence in the record." Id. at 551 (quoting Nash, 212 N.J. at 540). "However, we review a PCR court's legal conclusions de novo." Hernandez-Peralta, 261 N.J. at 246; see also State v. Harris, 181 N.J. 391, 415-16 (2004).

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey). Under prong one, a defendant must establish that "counsel's representation fell below an

objective standard of reasonableness." Strickland, 466 U.S. at 688. Under prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The record amply supports the judge's findings and conclusions. He correctly determined defendant had not shown a reasonable probability the jury would have reached a different verdict if Jacobs testified at trial. Where prejudice has not been established, we need not consider whether counsel was ineffective. Id. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").

The judge also properly concluded defendant failed to set forth a meritorious claim relating to the State's alleged ex parte communication with the trial court. The court immediately addressed the issue on the record before the trial resumed the next morning. There is no basis to find defendant was prejudiced by the alleged ex parte communication.

Additionally, Rule 3:22-3 provides a PCR petition "is not . . . a substitute for appeal from conviction," and our Supreme Court has articulated "[a] defendant ordinarily . . . may not use [PCR] to assert a new claim that could

8

have been raised on direct appeal." State v. McQuaid, 147 N.J. 464, 483 (1997) (citing R. 3:22-4). Here, defendant raised issues relating to the court's questioning of the juror on direct appeal. He did not raise his ex parte communication claim on direct appeal and is precluded from asserting that claim now.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0908-24